## 2008 ME 52

## MacMAHAN ISLAND ASSOCIATION

v.

## Nathalie Taft ANDREWS et al.

Supreme Judicial Court of Maine.

Argued: Jan. 18, 2008.

Decided: March 18, 2008.

Edward A. Brown, Esq., Brown & Pols, P.A., Brunswick, ME, Edward C. Mendler, Esq. (orally), Wayland, MA, for MacMahan Island Association.

Albert G. Ayre, Esq. (orally), Portland, ME, for Nathalie Taft Andrews, Frederick L. Taft and Eleanor Taft Ethridge.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and ALEXANDER.

ALEXANDER, J.

[¶ 1] MacMahan Island Association (the Association) (formerly Sheepscot Island Company (SI)) appeals from a summary judgment by the Superior Court (Sagadahoc County, *Warren, J.*) determining that SI's conversion to the Association, a nonprofit organization, was invalid. The Association argues that (*l*)the court erred in finding its plan for nonprofit conversion (the plan) was invalid; (2) Frederick Taft, Nathalie Taft Andrews, and Eleanor Taft's (the Tafts) statutory appraisal rights provide them with the exclusive and proper

remedy in this case; (3) the Tafts lack standing to contest the validity of the conversion; and (4) the conversion is protected by the business judgment rule. The Tafts cross-appeal, arguing that (1) the trial court erred in dismissing their claims of inadequate disclosure, and (2) additional shares issued by SI are void.

[¶ 2] Because the plan for nonprofit conversion did not include any provision for the reclassification of the shares of the for-profit corporation following conversion, as required by Maine law, see 13–C M.R.S. § 931(3)(B) (2007), the trial court correctly concluded that the nonprofit conversion was invalid. Accordingly, we affirm and address only that limited issue.

## I. CASE HISTORY

[¶ 3] This appeal arises from a shareholder dispute that began when Sheepscot Island Company, a for-profit stock corporation, attempted to convert into a nonprofit organization called the MacMahan Island Association.

[¶ 4] SI provided services to cottage owners on MacMahan Island, which is located near the mouth of the Sheepscot River. There are forty cottages on the island. All the cottage owners are assessed certain fixed costs to support the island's common paths and roads, a yacht club building, several floats, and tennis courts. SI also receives payments for additional services provided to cottage owners. These services include storage and sewer maintenance, water, plumbing, and firewood. The Tafts are each stockholders of SI. Frederick Taft owns a cottage on the island, but Nathalie Taft Andrews and Eleanor Taft do not.

[¶ 5] Prior to 2000, SI was authorized to issue 3500 shares. Over ninety percent of the shares are owned by cottage owners or members of families of cottage owners. There are a few shareholders who are neither cottage owners nor family members of the cottage owners.

[¶ 6] In October of 2000, the shareholders of SI voted to increase the number of authorized shares by 20,000. The amendment to the SI articles of incorporation authorizing the issuance of additional shares was not completed until February 2006, after the attempted conversion to the Association occurred.

[¶ 7] In 2004, the SI Board of Directors created a committee to explore the feasibility of converting SI to a nonprofit organization, using the new name "MacMahan Island Association." In late 2004 or early 2005, the committee submitted its report to the Board. The report contained a plan for nonprofit conversion and proposed bylaws of the new association. At its April 2005 meeting, the Board voted unanimously to endorse the plan and bylaws and to present them to the shareholders.

[¶ 8] Pursuant to the plan, shareholders who do not own cottages would not have any right to share in any liquidation, sale, or other realization of the assets of the corporation. Non-cottage owners would lose any equity interest in SI's assets. All shares of SI would be deemed surrendered, but the owners of each of the forty cottages on MacMahan Island would be entitled to one cottage membership in the new Association. Pursuant to the articles of nonprofit conversion and bylaws of the Association, cottage members would have the right to receive services from the association; have access to the island's common paths and roads, the yacht club building, several floats, tennis courts; and be able to vote at meetings of the Association. Family members, household guests, and renters of cottages would have privileges to use the facilities and services of

the Association, but no right to vote in the governance of the Association.

[¶ 9] The shareholders were sent the plan, the articles of conversion, and a proxy. A shareholders' meeting was held on August 6, 2005. Prior to the meeting, the Tafts delivered written notice of their intent to assert their rights of appraisal and demand payment pursuant to 13–C M.R.S. §§ 1301–1306 (2006); 13–C M.R.S. §§ 1321–1327 (2006).[1] A majority of the votes cast at the August meeting were in favor of the plan. However, there is an issue, that we do not address, regarding which shares were valid and should have been counted in the vote. The Tafts each voted against the plan.

[¶ 10] The articles of nonprofit conversion were filed with the Maine Secretary of State's Office in August 2005, stating an effective date of October 30, 2005, for the conversion from SI to the Association.

[¶ 11] In September 2005, the Tafts received notices as to payment from SI.[2] SI estimated that the fair value of the shares was ten dollars per share. Applied to the 3500 original shares, this suggested that the Board valued the assets of SI, including the common paths and roads, the yacht club building, several floats, and the tennis courts of this coastal island property at $35,000.

[¶ 12] The Tafts notified SI that they rejected the amount offered and would pursue their rights of appraisal. The Association filed its complaint in December 2005 for judicial determination of the fair value of shares and accrued interest pursuant to 13–C M.R.S. § 1331 (2006).[3] The Tafts filed an answer and counterclaim, arguing that SI had unlawfully issued and over-issued shares, and that the plan was null and void. In March 2006, the Association filed a motion for summary judgment. A hearing was held in October 2006.

[¶ 13] Following the hearing, the court issued several orders addressing a wide range of issues in dispute between the parties. Because the court determined that the nonprofit conversion plan was invalid for failure to address the manner and basis of reclassifying shares as required by 13–C M.R.S. § 931(3)(B), many of the issues were addressed by the trial court as dictum or advisory rulings that were not essential to the resolution of the dispute. In its final order issued December 20, 2006, the court declared the plan invalid because it did not "reclassify the shares of non-cottage owning shareholders." This appeal followed that order.

## II. LEGAL ANALYSIS

[¶ 14] The requirements for a nonprofit conversion plan of a for-profit corporation

---

1. During the summary judgment hearing, the parties addressed the 2000 version of title 13–A of the Maine Revised Statutes as the applicable statute in this case. It is unclear from the record exactly why this was decided. The actions affecting the present action—the attempted nonprofit conversion and the request for appraisal rights—occurred in 2005. The last amendments to the relevant statutes occurred in 2003, and therefore, the statute applicable to this matter is the 2006 version of title 13–C. Title 13–C has since been further amended. P.L.2007, ch. 289, §§ 32–40 (effective Sept. 20, 2007) (codified at 13–C M.R.S. §§ 1304, 1321–1325).

2. Eleanor Taft and Nathalie Taft Andrews received payments, but Frederick Taft did not because there was a dispute as to whether he had adequately certified that he had owned shares prior to the announcement of the plan. However, this dispute is not part of the current appeal.

3. Title 13–C M.R.S. § 1331 has since been amended. P.L.2007, ch. 323, § C–17 (effective July 1, 2008) (codified at 13–C M.R.S. § 1331 (2007)).

are succinctly stated in 13–C M.R.S. § 931(3). Among other things, a nonprofit conversion plan must include a statement specifying:

B. The manner and basis of reclassifying the shares of the corporation following its conversion into memberships, if any, or securities, obligations, rights to acquire memberships or securities, cash, other property or any combination thereof;

13–C M.R.S. § 931(3)(B).

[¶ 15] Thus, any conversion plan must include a statement describing the process for reclassifying shares of the for-profit corporation into memberships, securities, obligations, rights to acquire memberships or securities, cash, other property, or a combination of the described rights or interests. The SI conversion plan included no such process for reclassification of the shares of the corporation. Instead, the conversion plan indicated that (1) all shares of SI would be deemed to be surrendered; (2) non-cottage owning shareholders would lose any equity interest in SI's assets; and (3) the corporate assets would be transferred to the Association, which would be controlled by the cottage owners who would be entitled to cottage memberships in the new nonprofit entity.

[¶ 16] A surrender and effective cancellation of shares and termination of the equity interest of some shareholders, to be followed by a post-conversion action to determine value of shares, is not a reclassification as required by section 931(3)(B). Accordingly, the Superior Court correctly determined that the nonprofit conversion plan was invalid. Having determined that the conversion plan was invalid, the Superior Court was not required to address the other issues that the parties presented for its consideration regarding disputes in implementing the now invalidated conversion plan.

[¶ 17] In affirming the Superior Court's determination that the conversion plan was invalid because it lacked the requisite provision for reclassifying the shares of the corporation, we express no opinion on any other issue that was addressed as dictum by the Superior Court.

The entry is:

Judgment affirmed.